UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

_____

UNITED STATES OF AMERICA,          CRIMINAL ACTION

          Plaintiff          Docket No:  2:21-cr-00132-JDL


     -versus-


DEREK GERRISH,

        Defendant
_____

Transcript of Proceedings


Pursuant to notice, the above-entitled matter came on for **Continued Sentencing** held before **THE HONORABLE JON D. LEVY**, United States District Court Judge, in the United States District Court, Edward T. Gignoux Courthouse, 156 Federal Street, Portland, Maine, on the 28th day of March, 2023 at 10:07 a.m. as follows:


Appearances:

For the Government:  Lindsay Feinberg, Esquire

For the Defendant:  Robert C. Andrews, Esquire

Also Present:  Jennifer Metcalfe, U.S. Probation Officer



Tammy L. Martell, RMR, CRR
Official Court Reporter

(Prepared from manual stenography and
computer-aided transcription)

```
 1                (Open Court.  Defendant Present.)
 2           THE COURT:  Good morning.  We are now convening a
 3   hearing in the case of United States versus Derek Gerrish,
 4   21-CR-132.  Counsel, I would like you to note your appearances
 5   for the record.
 6           MS. FEINBERG:  Good morning, Your Honor, Lindsay
 7   Feinberg on behalf of the Government this morning.
 8           THE COURT:  Good morning.
 9           MR. ANDREWS:  Good morning, Your Honor, Robert Andrews
10   for Derek Gerrish.
11           THE COURT:  Good morning.  The record will reflect
12   that Probation Officer Metcalfe is present as well.  And,
13   Attorney Feinberg, has the Government provided notice to any
14   victim that might be entitled to notice under federal law?
15           MS. FEINBERG:  There is no victim, so notice -- no
16   notice has been provided, Your Honor.
17           THE COURT:  Thank you.  The record will reflect that
18   Mr. Gerrish is here as well.  This is the continuation of a
19   hearing that we began previously.  I see that was back on
20   December 19th.  At the conclusion of the parties' presentation
21   and Mr. Gerrish's allocution I asked the parties to submit
22   briefs on a legal question that had been generated during the
23   sentencing arguments regarding the sentencing guidelines.  The
24   parties submitted those briefs and we are prepared to complete
25   the sentencing today.
```

And so, counsel, as our first step I want to address your arguments regarding the purity-based methamphetamine provisions of the sentencing commission guidelines and then we'll take stock of where we then stand in this sentencing process.

I have carefully considered the arguments for and against categorically disagreeing with the purity-based methamphetamine provisions of the U.S. Sentencing Commission guidelines.  There are solid arguments supporting the two opposing positions which are represented in two 2019 decisions, one from this district, United States versus Kaufman, and the other from the District of New Hampshire, United States versus Bean.  I've also examined the body of decisions published since Kaufman and Bean, most of which follow Bean and adopt a categorical disagreement with a purity-based methamphetamine guideline.

There are several reasons cited in these decisions in support of that position which I will turn to address.  First, that the purity-based methamphetamine guidelines were not empirically based.  This is the case.  There is, however, no evidence that any of the drug offenses that are addressed in the sentencing guidelines were empirically based.  In other words, those guidelines were not empirically based.

In Kimbrough the Supreme Court recognized that the sentencing commission used what was called a weight-driven approach rather than an empirical approach.  That the guidelines reflect the sentencing commission's subjective

1    policy judgments is not a reason without more to cat -- to

2    categorically invalidate those policy judgments and refuse to

3    consider them.

4         Moreover, unlike the cocaine crack powder disparity

5    considered in Kimbrough by the U.S. Supreme Court, this is not

6    an instance where the commission itself has conducted studies

7    and determined that the sentencing disparity is unwarranted.

8    Nor is this an instance in which the commission has repeatedly

9    urged Congress to change the applicable guideline.

10        Second, that the purity-based methamphetamine guidelines

11   are a poor proxy for where an offender stands in the chain of

12   distribution.  I am persuaded by and therefore accept this

13   conclusion for the reasons that are developed in the case law.

14   But also, the purity-based methamphetamine guidelines are a

15   reasonable proxy for the danger of the methamphetamine a

16   particular defendant trafficked or possessed.  That view is

17   true without regard to the fact that again based on the case

18   law almost all of the methamphetamine in circulation today is

19   pure.

20        Third, the argument has also been made that purity-based

21   methamphetamine guidelines are also prone to produce

22   unwarranted sentencing disparities between similarly situated

23   offenders depending on whether or not the authorities have

24   tested the confiscated methamphetamine for purity.

25        Now, I have no evidence before me indicating the frequency

1    with which authorities failed to test methamphetamine that has

2    been confiscated from a federally charged defendant, thus the

3    record doesn't reveal whether this concern expressed about an

4    unfair disparity resulting from the failure of law enforcement

5    to test the purity of methamphetamine is real or hypothetical.

6         Anecdotally I can state that in this district the quantity

7    and purity of the methamphetamine is regularly tested and

8    reported, as is true in this case.

9         Fourth, it is also argued that the Court should rely on

10   the EQUAL Act and the justice department's recent decision to

11   treat -- treat crack and powder cocaine the same as a basis for

12   a categorical disagreement regarding the purity-based

13   methamphetamine guidelines.  However, again based on the

14   discussion of this issue in the case law, and not based on any

15   evidence in the record of this case, the arguments that have

16   resulted in the developments associated with the EQUAL Act and

17   the justice department's decision are supported by research,

18   and that of course is research specific to cocaine and crack

19   cocaine.  That does not address methamphetamine.

20        While it is inviting to treat methamphetamine and cocaine

21   in the same fashion, they are different drugs.  And although we

22   can speculate that the arguments supporting the adoption of the

23   EQUAL Act apply equally to methamphetamine, that is no more

24   than speculation.

25        I am not in a position to make the legislative judgment or

1   the prosecutorial judgment associated with the EQUAL Act and

2   the justice department's decision regarding the crack powder

3   cocaine disparity.

4       Sixth, it is suggested that due to the purity-based

5   guidelines a given quantity of methamphetamine results in a

6   higher base offense level than the same quantity of other

7   harmful drugs such as fentanyl, heroin, and cocaine base.

8       Now, the fact that the guidelines treat various drugs

9   differently does not demonstrate one way or the other that that

10  differential treatment is irrational or unprincipled or unfair.

11  It might be, but the record before me does not show that to be

12  the case, and I will not categorically presume that is the

13  case.

14      As I said at the outset, most of the published court

15  decisions since Kaufman and Bean have adopted a categorical

16  disagreement with the purity-based methamphetamine guidelines,

17  but it should come as no surprise that judges expressing a

18  categorical disagreement would feel compelled to do so in a

19  published decision because a categorical disagreement is one

20  which by definition will apply in every similar future case

21  that will come before that judge.

22      So although I am mindful that my conclusion not to adopt

23  the categorical -- categorical disagreement goes against the

24  weight of the cohort of recently published decisions, there is

25  really no way to know whether that cohort is representative of

1    the views of the majority of judges who have considered and

2    will consider this question.

3        I also want to emphasize that this is not a case in which

4    Mr. Gerrish has been charged with a federal drug offense

5    involving methamphetamine.  His sentence is not controlled by a

6    statute mandating -- mandating that I impose a minimum

7    mandatory sentence.  If I am presented with that situation in a

8    future case, I might not rest a decision on the parties'

9    written submissions but instead require an evidentiary hearing

10   so that I could base an evaluation of the purity-based

11   guidelines on solid evidence that has been subject to the

12   rigors of the adversarial process.

13       Here Mr. Gerrish's case is one in which the guidelines,

14   the guideline rather, is purely advisory.  As such, and as

15   stated by the court in Gall, the guideline is no more than a

16   starting point and the initial benchmark, end of quote, for the

17   determination of the sentence that I am going to impose.  The

18   guideline is far from the final word.  And as I will soon

19   explain in this case, there are good reasons, in keeping with

20   Section 3553(a), not to subject Mr. Gerrish to a sentence at or

21   near the length called for by the guidelines, and of course I

22   retain my discretion to vary in order to achieve what is a just

23   and fail -- just and fair sentence in this case.

24       So acknowledging that there are good arguments on both

25   sides of this question, I've concluded that I will not in this

1  case announce a categorical disagreement with the purity-based

2  methamphetamine guidelines.

3      Now, counsel, as I have reviewed your submissions and gone

4  back and looked at the record of this case it's not clear to me

5  that there are any remaining objections that the defendant is

6  pressing at this stage that I need to address, so, Mr. Andrews,

7  let me turn to you, are there additional objections I need to

8  address?

9      MR. ANDREWS:  Your Honor, at the sentencing at the

10 previous hearing the Government referred to a conviction and

11 referred to a drug weight from that conviction that we didn't

12 believe was supported by the record and we submitted briefing

13 on that, Your Honor.

14     THE COURT:  Right.

15     MR. ANDREWS:  And we believe that that is still

16 outstanding.  We do not want this Court considering the

17 19 grams that's included in the presentence report for an

18 offense that was for a single gram.

19     THE COURT:  Okay.  Thank you.  Attorney Feinberg.

20     MS. FEINBERG:  Yes, Your Honor.  As a housekeeping

21 matter, this was something that was addressed in the

22 Government's sentencing memorandum as well, and as the

23 Government noted in its supplemental sentencing memorandum we

24 have submitted for the Court's review two sentencing exhibits

25 that I would move to admit at this juncture.  They were -- have

1    been previously provided to the Court, probation and defense

2    counsel.

3        Government Sentencing Exhibit 1, or A I think as I have

4    designated it, is the Rule 11 hearing transcript --

5        THE COURT:  Right.

6        MS. FEINBERG:  -- which is dated September 18, 2015,

7    in the State of Maine versus Derek Gerrish.  It's docket number

8    ALFSC-CR-2015-1062.  And Government's proposed Sentencing

9    Exhibit B is the certified copy of the JNC for that same case,

10   Your Honor.

11       THE COURT:  Right.

12       MS. FEINBERG:  And it is the Government's position, as

13   set forth in its supplemental sentencing memorandum, that the

14   conduct that Mr. Gerrish admitted to in this underlying

15   conviction that Attorney Andrews referenced makes it clear that

16   he was in fact dealing drugs out of this house and that he was

17   not the only one dealing drugs out of this house, and therefore

18   there is a prior admission by the defendant essentially

19   adopting and confirming the veracity of the police reports

20   recounted in the PSR.

21       THE COURT:  Thank you.  Attorney Andrews, why don't

22   you respond to that point?  I did read the transcript of the

23   Rule 11 hearing before judge -- Justice Douglas.  Why should I

24   not conclude, as Attorney Feinberg just suggested, that this

25   demonstrates support for your client's -- your client's support

1  for essentially the veracity of the police report that was

2  prepared in that case?

3      MR. ANDREWS:  I think he is talking -- I think the

4  veracity of the police report is the incident for the

5  hand-to-hand buy.  I don't think the veracity of the police

6  report is for the search that resulted sometime later in a

7  place that isn't identified as the same house, and for those

8  reasons I don't think that that's a preponderance of the

9  evidence, Your Honor, which I think is the burden that the

10  Government must sustain in order to be able to argue that it is

11  in fact 19 grams versus the one gram that is referenced in the

12  Rule 11 proceeding in the evidence recitation accepted by the

13  Court and accepted by Mr. Gerrish and his attorney.

14      THE COURT:  And -- and would you please speak to why

15  that quantity -- how that quantity factors in your sentencing

16  argument in this case?

17      MR. ANDREWS:  It doesn't -- that -- it doesn't factor

18  into my argument, Your Honor.  I think that the Government is

19  prohibited from trying to say he is really someone who is

20  involved in larger scale drug operations and has done so

21  repeatedly.  I think that what the evidence we have from his

22  prior conviction is that he was involved in a hand-to-hand and

23  as a street dealer and that's basically the evidence that they

24  have.  And it's not that different from what we have here.

25  Although there are larger quantities here, we're talking about

1    someone who was doing hand-to-hands on the street.

2         THE COURT:  Right.  Well -- I see.  Thank you.

3       The Government's Exhibits A and B which were submitted

4    March 21st, 2023, are admitted, and it seems to me that

5    together with the other information before me it is confident

6    evidence to establish the points the Government makes;

7    therefore, the objection is overruled.

8         MS. FEINBERG:  And if I may, Your Honor, I would just

9    like to confirm on the record Attorney Andrews raised sort of a

10   blanket objection to the Court's consideration of any facts set

11   forth in the PSR regarding Mr. Gerrish's criminal history, and

12   I just wanted to confirm on the record that he is no longer

13   pursuing that objection for appellate purposes.

14        MR. ANDREWS:  Your Honor, from my perspective, right,

15   the reason I do this is because if the Court were to reference

16   a fact that I didn't think was appropriate in considering the

17   sentence that's going to be imposed on Mr. Gerrish, I have to

18   do that in advance.  If I don't make it aware that we challenge

19   that fact then the Court of Appeals and everyone else is

20   obliged to take that as an accepted fact that wasn't objected

21   to, so I make those objections.  And the reason is in case the

22   Court considers the 19 grams and it becomes a factor in his

23   sentence I want to make sure that I have preserved the

24   factual --

25        THE COURT:  Well, that's the 19 grams, how about

1    everything else?

2            MR. ANDREWS:  Everything else is fine, Your Honor.  I

3    just.

4            THE COURT:  All right.  So I understand that your

5    objection to the 19 grams issue is preserved, but otherwise

6    you're not pressing objections to the facts set forth regarding

7    criminal history?

8            MR. ANDREWS:  Assuming that -- assuming that they

9    haven't been argued by the Government and the Court does not

10   take that into consideration in the sentence, then, no.  I

11   think that --

12           THE COURT:  You can't reserve your objections, you

13   have to object or not.  I have to know what needs to be ruled

14   on.

15           MR. ANDREWS:  Which -- which is what I'm trying to

16   say, Your Honor.

17           THE COURT:  So what are you objecting to?

18           MR. ANDREWS:  I'm -- I'm objecting to the descriptions

19   of -- well, right now I'm only objecting to the description

20   of -- of that offense involving the drug characterization.

21   That is important to us.

22           THE COURT:  Okay.

23           MR. ANDREWS:  Right.  The other --

24           THE COURT:  I have --

25           MR. ANDREWS:  The other --

1          THE COURT:  I have already ruled on that.

2          MR. ANDREWS:  I understand, Your Honor.  The rest are

3    there, right, I have objected.  I think that has some carryover

4    effect in an appeal and -- and that's what I'm trying to do,

5    Your Honor.

6          THE COURT:  Well, I can't speak to what carryover

7    effect it might have for an appeal, but I want to remind you

8    that we have a process in place under our local rules by which

9    counsel is expected to in good faith bring to the Court's

10   attention whether it has actually a meaningful objection to any

11   of the information in the presentence investigation report.  I

12   don't hear you doing that with the sort of blanket objection

13   that is not nonspecific.  We don't need to get into it further

14   now, but I want to remind you -- or rather I want to ask you to

15   go back and take a look at the local rule as we -- as you

16   proceed.

17       Anything else, counsel?

18          MS. FEINBERG:  No, Your Honor, thank you.

19          THE COURT:  Anything else?

20          MR. ANDREWS:  No, Your Honor.

21          THE COURT:  Thank you.  I have, in preparation for

22   sentencing in this case, of course reviewed all of the written

23   materials submitted by both sides which includes various

24   exhibits as well as of course now several memorandum --

25   memoranda, and I have carefully considered the revised

1    presentence investigation report in this case which I am

2    adopting now in its entirety as findings in support of the

3    sentence I'm about to impose.

4        I want to begin by summarizing the applicable provisions

5    of the U.S. Sentencing Commission guidelines.  Under the

6    guidelines, Mr. Gerrish's total offense level is 31 and his

7    Criminal History Category is II.  This results in a guideline

8    sentencing range of 121 to 151 months, a period of supervision

9    of three years, a fine range of 30,000 to $1,000,000, and under

10   the guidelines he is ineligible for probation.

11       Counsel, is there any objection to the summary I've just

12   offered?

13           MS. FEINBERG:  No objection from the Government, Your

14   Honor.

15           MR. ANDREWS:  None, Your Honor.

16           THE COURT:  Thank you.  In addition to those written

17   materials of course I have listened carefully to the arguments

18   that the attorneys presented at the last hearing and again

19   today as well as the statements made both by Mr. Gerrish --

20   Gerrish in allocution as well as by the other individual or

21   individuals that spoke at the sentencing.  I have gone back and

22   examined all of my notes in that regard.

23       And I am particularly mindful of the sentencing factors

24   under Title 18 Section 3553(a) that apply, and I want to state

25   them on the record because they are important, and they are the

1    standards by which I very much have weighed the information and

2    evidence that's before me.

3        First, the nature and circumstances of the crime; next Mr.

4    Gerrish's history and characteristics; third, the need for the

5    sentence to reflect the seriousness of the crime, promote

6    respect for the law, and provide just punishment; in addition

7    the need to protect the public from further crimes; the need to

8    provide Mr. Gerrish with educational and vocational training,

9    medical care, or other correctional treatment in the most

10   effective manner; and the need to avoid unwarranted sentencing

11   disparities.  I have weighed all of those factors as I've

12   thought about the information and the arguments that have been

13   presented to me.

14       Mr. Gerrish has pled guilty to possession with intent to

15   distribute fentanyl which is a Class C felony under federal

16   law.

17       I want to turn first to the criminal conduct itself.  Mr.

18   Gerrish was found in possession of various quantities of

19   methamphetamine, fentanyl, MDA, cocaine base, and oxycodone,

20   really unusual in terms of drug offenses that I've seen just in

21   terms of the variety of drugs in one place at one time.  And

22   all of this was in the parking lot of the Homewood Suites hotel

23   in Scarborough, Maine.

24       The quantities of fentanyl at -- at 876 grams and

25   methamphetamine were sizable.  One moment.  Well, I'll just

1    rely on the amount that's set forth in the revised presentence

2    investigation report with respect to the amount of the

3    methamphetamine without trying to make sure I've got the

4    accurate number here, but it was a lot.  A very sizable amount.

5    And he had $8,000 in cash on him -- on him, some of which was

6    counterfeit, and also firearms, magazine, and ammunition in the

7    vehicle.

8         And so this drug offense was plainly of a different

9    magnitude than Mr. Gerrish's 2005 conviction for unlawful

10   trafficking heroin which he committed when he was 25 years old

11   and for which he received a five-year sentence all but 90 days

12   suspended.

13        The actual quantities of methamphetamine are set forth on

14   pages five and six of the revised presentence report at ECF 81.

15   I'm not going to do the math now, but it's roughly 330 grams.

16        As to this offense then the large quantity and variety of

17   drugs, and the presence of weapons in particular and a large

18   amount of cash, make this a particularly serious drug offense,

19   and at least relative to the 2005 conviction shows a

20   substantial increase in criminality.

21        Turning to Mr. Gerrish's history and characteristics, he

22   will soon turn 33 years of age.  He is the father of an

23   11-year-old daughter in the care of her maternal grandparent.

24   As an adult there have been periods of Mr. Gerrish's life where

25   he has engaged in sustained employment both working in the

1    painting and construction trades as well as at a restaurant,

2    and there is no doubt that for a period of time, as he has

3    explained, he lived a positive life and was an active member of

4    the sober community -- community in Sanford, Maine.

5        He has had a difficult life.  His family of origin exposed

6    him at a very young age to unlawful drug use and extreme family

7    dysfunction.  His mother died of an overdose when he was age

8    nine and his father used opiates, was incarcerated and

9    released, and then reincarcerated.

10       His father was, as Mr. Gerrish's lawyer characterized it,

11   a monster, and Mr. Gerrish was introduced to drug use as a

12   young child, and drugs have very much influenced the course of

13   his life.  And he has not to date completed any what I will

14   describe as sustained substance abuse treatment program

15   although he has had substance abuse treatment at various times.

16       Mr. Gerrish describes his arrest on June 1st of 2021 as

17   saving his life, and I have no doubt that that is true.

18       Also associated with Mr. Gerrish's highly troubling

19   childhood is the fact that he suffered from a long history of

20   substantial mental health disorders without any sustained

21   treatment.  He has been diagnosed with depression, PTSD, ADHD,

22   and substance abuse disorder.

23       In addition, as I measure a fair and just sentence in this

24   case it is notable that although Mr. Gerrish has a total of 11

25   adult convictions his longest period of continuous

1    incarceration prior to this offense was 90 days.

2        Mr. Gerrish has been detained since June 1st of 2021 and I

3    have received no reports of any type of disciplinary actions

4    taken against him during the period that he has been

5    incarcerated.

6        And I conclude in this case that a significant downward

7    variance is supported based upon Mr. Gerrish's long-standing

8    untreated drug addiction -- largely untreated drug addiction I

9    should say; secondly, his lifelong and largely untreated mental

10   health disorders; and the fact that prior to this offense his

11   longest continuous period of incarceration to date was 90 days.

12       Counsel, before I complete my sentencing analysis in this

13   case is there any aspect of your arguments I have not addressed

14   that you believe needs to be addressed?

15       Attorney Feinberg?

16           MS. FEINBERG:  No, Your Honor.

17           THE COURT:  Attorney Andrews?

18           MR. ANDREWS:  No, Your Honor.

19           THE COURT:  The law requires that I consider various

20   purposes to be achieved by a sentence in a case such as this.

21   Among them are the seriousness of the offense and to provide

22   adequate deterrence.

23       Here this is a very serious drug offense for the reasons

24   I've already described involving very serious drugs, the

25   presence of weapons, a very serious crime; and, secondly, here

1    also it seems to me the sentence has to afford adequate

2    deterrence to Mr. Gerrish to make sure that he never ever finds

3    himself ever again trafficking drugs.

4        Here he is at this point in his life again facing

5    incarceration for trafficking drugs.  He has got to understand

6    that if this continues in the future the sentences will be even

7    harsher.  Or could be harsher.

8        And so with those considerations in mind, as well as the

9    additional purposes of sentences, I have concluded as follows;

10    and, Mr. Gerrish, I would ask that you stand at this time.

11        Taking these various factors into mind, I am imposing a

12    downward variance -- variant sentence.  I have concluded that

13    what is just and fair in your case is as follows:  I'm

14    committing you -- ordering you committed to the custody of the

15    U.S. Bureau of Prisons for a total term of 90 months.  I am

16    recommending to the Bureau of Prisons that you be considered

17    for the 500-hour RDAP program and mental health treatment as

18    well.

19        You are remanded to the custody of the U.S. Marshal for

20    the District of Maine at the conclusion of this hearing in

21    furtherance of the sentence I've just ordered.

22        I'm ordering that you be on supervision following your

23    release from prison for three years subject to all of the

24    mandatory, standard, and special conditions of supervision that

25    are set forth in the revised presentence report.

1    Attorney Andrews, did you review those with your client?

2    MR. ANDREWS:  I did, Your Honor.

3    THE COURT:  Is there any objection to any of them?

4    MR. ANDREWS:  No, Your Honor.

5    THE COURT:  Mr. Gerrish, did you read them?

6    THE DEFENDANT:  I have, Your Honor.

7    THE COURT:  Do you feel that you understand them?

8    THE DEFENDANT:  Yes, I do.

9    THE COURT:  You're prepared to comply?

10   THE DEFENDANT:  Yes, sir.

11   THE COURT:  I'm imposing a special assessment of $100.

12   I am not imposing a fine because I find Mr. Gerrish does not

13   have the means by which to pay a fine.

14   I believe there is a mandatory forfeiture in this case.

15   Attorney Feinberg, is that correct?

16   MS. FEINBERG:  Yes.  There should be a proposed order

17   before you, Judge.

18   THE COURT:  And that order will enter.

19   I want the record to be clear that I have carefully

20   considered each of the defendant's objections to the guidelines

21   analysis in this case as they would affect his total offense

22   level and criminal history category.  Even if I accepted one or

23   all of those objections, the sentence I have just announced is

24   untethered from the guidelines.  I would impose the same exact

25   sentence even if the applicable sentencing guideline range

1    would have been reduced by any or all of the objections made by

2    the defendant.

3        Attorney Andrews, before I advise your client of his

4    rights of appeal, is there any aspect of the sentence I have

5    not addressed that needs to be addressed?

6            MR. ANDREWS:  Your Honor, I just want to make sure.

7                (Counsel conferred with defendant.)

8            MR. ANDREWS:  Your Honor, Mr. Gerrish is asking that

9    the Court recommend Schuylkill as the place of incarceration.

10           THE COURT:  Yes, you had previously voiced that, and I

11   have decided not to make that recommendation.  I'm simply not

12   familiar with the facility and I'm not willing to make a

13   recommendation to the Bureau of Prisons that I simply have

14   really no understanding of.  And so although I appreciate his

15   request, I have every reason to believe it's made in good

16   faith, it's not a recommendation I intend to make.

17       Attorney Feinberg, anything else from the Government as to

18   elements of sentence I have not addressed?

19           MS. FEINBERG:  Nothing, Your Honor, thank you.

20           THE COURT:  Thank you.

21       Mr. Gerrish, I want to advise you of your rights to

22   appeal.

23       As I recall, Attorney Andrews, this was a conditional plea

24   in this case.

25           MR. ANDREWS:  That is correct, Your Honor.

1          THE COURT:  And there is no plea agreement and there

2    has been no waiver of any appellate rights, correct?

3          MR. ANDREWS:  That's correct.

4          THE COURT:  Mr. Gerrish, you have the right to appeal

5    both your conviction and your sentence.  To do that, you've got

6    to file with the clerk of court within 14 days of today a

7    written notice of appeal; do you understand?

8          THE DEFENDANT:  I do.

9          THE COURT:  If you fail to do that, you'll have given

10   up your right to appeal your sentence and your conviction; do

11   you understand?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Also, if you can't afford to appeal, you

14   can appeal without cost to you.  At your request the clerk will

15   prepare and file a notice of appeal on your behalf without

16   charge, but again that written request has to be received

17   within 14 days of today; do you understand?

18         THE DEFENDANT:  I do.

19         THE COURT:  Mr. Gerrish, I take what you had to say at

20   the last hearing that we conducted in this case as being real

21   and sincere, and I do see in you great potential for someone to

22   come out of this whole experience in fact a changed person

23   prepared to live what will be a healthy and positive life.  I

24   hope that you will do everything you can during the period that

25   you're incarcerated, take advantage of whatever is offered to

1    you that might help you on that path, and I hope that you will

2    dedicate yourself every day to this goal, you know, the goal of

3    sobriety, goal of living a life that you can be proud of.

4        I've tried to take into account all that went on in your

5    life that we wish -- no one would wish on anyone that you have

6    experienced and have had to deal with.  You have had to deal

7    with a lot.  And with that, with everything that's transpired,

8    I see in you the possibility that you can really change things

9    and redeem yourself.

10        Nothing seems to me would serve justice better than if you

11    come out of this whole experience, go back into society, get a

12    job or start another construction company or do whatever it is

13    that you wish to do, and be a role model for other people who

14    are fighting the same battles that you have had -- that you

15    have had to fight.  That's my hope for you.  I see that

16    potential in you.  I hope that happens.

17            THE DEFENDANT:  Thank you.

18            THE COURT:  I want to thank the attorneys for all

19    their efforts in this case along with Probation Officer

20    Metcalfe.

21        Charity, anything else we have not addressed?

22            THE CLERK:  No, Your Honor, thank you.

23            THE COURT:  We stand adjourned, thank you.

24            THE CLERK:  All rise.

25                    (Time noted:  10:40 a.m.)

1                    **C E R T I F I C A T I O N**

2        I, Tammy L. Martell, Registered Merit Reporter, Certified

3   Realtime Reporter, and Official Court Reporter for the United

4   States District Court, District of Maine, certify that the

5   foregoing is a correct transcript from the record of

6   proceedings in the above-entitled matter.

7        Dated:  June 28, 2023

8              /s/ Tammy L. Martell

9              Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25